## Wilson *v.* Weaver, Appellant (No. 2).

*Bailment—Conditional sale—Public sale to fix value.*

An agreement of bailment for two horses is not converted into a conditional sale by the facts that the bailor and bailee agreed that the value of the horses should be fixed by exposing them at a public sale, and that the horses were knocked down to the lessee at the sale, but that they did not leave the possession of the lessor after the sale until the contract of bailment was executed.

In such a case it is immaterial that a portion of the rental was paid by the transfer to the lessor of a team of horses, instead of a cash equivalent; nor is it material that the person who bought the horses from the bailee as his property at a date subsequent to the execution of the bailment, had paid a price for them less than the amount named in the agreement of bailment. In a suit by the bailor against such purchaser, the question is the value of the horses to the bailor as it measured the purchaser's liability for the conversion.

Argued March 12, 1917. Appeal, No. 2, Feb. T., 1917, by defendant, from judgment of C. P. Lycoming Co., June T., 1915, No. 123, for plaintiff on case stated in case of H. H. Wilson v. George W. Weaver. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Case stated to determine the ownership of two bay horses.

From the case stated it appeared that on January 10, 1914, an agreement of bailment for the horses was executed by H. H. Wilson to Daniel Vargeson. This agreement was similar in its terms to that quoted in Wilson v. Weaver, (1) supra.

The material portions of the case stated were as follows:

On or about January 10, 1914, H. H. Wilson agreed with one Daniel Vargeson, that he would lease or hire to the said Vargeson a pair of bay horses and that the value of said horses should be fixed by exposing them

at public sale on or about the said 10th day of January, 1914, at Muncy, Pennsylvania, along with the rest of a car load of horses which the said Wilson was then selling, and that after the value was so fixed the said Vargeson and the said Wilson should execute an agreement covering the transaction between them.

In pursuance of this arrangement the said horses were exposed at the said sale and were knocked down to the said Vargeson at a price of $600.00.

Thereupon the said horses were brought back to the livery stable of the plaintiff, Wilson, at Williamsport, by the said Wilson and at the said stable, on January 10, 1914, the said Wilson and the said Vargeson executed an agreement for the said horses, a copy of which is hereto attached and marked "Exhibit No. 1," and at this same time Vargeson gave his note to Wilson, a copy of which is hereto attached and marked "Exhibit No. 2," for $275.00 to represent the difference between the Weaver team and the whole amount stated in this agreement to be paid, and after the said agreement was so executed and delivered by the said Vargeson to the said Wilson, the said horses were delivered by the said Wilson to the said Vargeson. In part payment of the amount reserved by said agreement the said Vargeson delivered to the said Wilson a team of horses which he, the said Vargeson, had purchased from George W. Weaver, the defendant, and which at the time they were delivered by Vargeson to Wilson were worth $325.00. Vargeson was indebted to Weaver for the purchase-price of the horses which Weaver had sold him.

Afterwards Vargeson sold the horses which he had procured from Wilson, and which were covered by the agreement foresaid, to George W. Weaver, for a price or sum of $425.00, and received the said money by credit or in cash from the said Weaver, and the said Weaver thereupon took possession of the said horses and converted them to his own use. At the time the horses were so

taken possession of by the said Weaver they were of the value of $275.00.

Vargeson has never paid Wilson the whole of the rent reserved by said agreement, but at the time he sold the team to Weaver as aforesaid, owed on account of said rent the sum of $275.00, together with interest thereon from January 10, 1914, and still owes the said sum.

All notes for rent which were given by Vargeson under the said agreement, are the property of Wilson and are in his possession.

If the court shall be of the opinion that the transaction between Wilson and Vargeson was a conditional sale, then judgment to be entered for the defendant, but if the court shall be of the opinion that the transaction was a bailment or leasing for hire, then judgment to be entered in favor of the plaintiff for the value of the horses at the time of the conversion, with interest from said date.    The cost to follow the judgment and either party to have the right of appeal to the Superior Court.

The court in an opinion by WHITEHEAD, J., entered judgment for plaintiff on the case stated.    Defendant appealed.

*Error assigned* was in entering judgment for plaintiff on case stated.

*John G. Reading,* with him *R. F. Allen,* for appellant.

*Max L. Mitchell,* for appellee.

OPINION BY KEPHART, J., May 17, 1917:

Like the preceding case, this is an interpleader proceeding.    It was admitted that the contract on its face was a contract of bailment, but it is contended that the conduct of the parties before and after its execution showed the transaction to be a sale, and that the writing in the form of a bailment was merely a subterfuge to secure a secret lien on personal property.

The terms of the arrangement, as shown by the case stated, were that Wilson, the claimant, agreed to lease to Vargeson a pair of bay horses, the value to be fixed by exposing them at a public sale, and the lease to be executed after the value had been ascertained. The horses were offered at public auction and were knocked down to Vargeson, but possession never left Wilson until the contract of bailment was executed. After the value was fixed, they were taken to Williamsport to the stable of the claimant, and when the agreement was executed, possession was turned over to the lessee.

There is nothing in this transaction to change the character of the agreement as it was executed after the value was fixed. To have constituted a sale, under the conditions here mentioned, when the horses were knocked down, delivery of possession or its equivalent must have taken place. Neither the title to or the possession of the horses left the claimant. There is nothing to support the conclusion that any intending creditors were misled by the manner in which the value was fixed. Under the agreement the method of fixing values would not have the effect in law of transferring the title or possession to the lessee named in the bailment, in so far as present or future creditors are concerned. Had there been a delivery of possession, the title would have passed: Burt v. Kennedy, 3 Pennypacker 238. While at a public outcry more prominence is given to the sale of property than at a private sale, the person to whom the goods are knocked down on condition of payment or other condition is not clothed with the badge of ownership until the condition is complied with or he receives the goods. Until that time it is well within the power of the parties to entirely change their method of dealing and effect a bailment instead of a sale. The parties to this contract had in their minds at all times an agreement of leasing or hiring, and there was nothing in their acts which showed a contrary intention. The property was delivered under the contract of bailment,

The fact that a portion of the rent was paid by the transfer to the lessor of a team of horses instead of their equivalent in cash, does not effect the situation. It is immaterial whether the rent be paid in cash, horses or any other thing of value. The notes given in this case were similar to the notes given in the preceding case, and for the reasons stated in Wilson v. Weaver, this objection is not well taken. Nor do we find any merit in the position that subsequently to the transaction between Wilson, bailor, and Vargeson, bailee, the horses were sold to Weaver, who paid to Vargeson the price agreed upon. As to this phase of the case, the question was the value of the horses to the bailor as it measured the appellant's liability for the conversion. The court fixed this at $275, and appellant should not complain if this sum was less than the amount he paid to Vargeson. This fact would not be sufficient evidence to establish collusion, and standing alone it would not be any evidence of collusion.

The assignments of error are overruled, and the judgment is affirmed.